[Crim. No. 895.   Fourth Dist.   Nov. 17, 1955.]

THE PEOPLE, Respondent, v. GUY MADDOX, Appellant.

Willis Mevis for Appellant.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

BARNARD, P. J.—The defendant was charged with incest with his daughter and, in a second count, with committing a lewd and lascivious act upon the same daughter, who was then under 14 years of age. The court appointed an attorney to represent him, and he later pleaded not guilty as to both counts. Subsequently, the court granted his request to withdraw his pleas of not guilty. He then pleaded guilty to the second count, the first count was dismissed on motion of the district attorney, and he applied for probation. Pursuant to section 288.1 of the Penal Code, a doctor was appointed to examine the defendant and report to the court. A hearing was later held in which the doctor's report and the report of the probation officer were considered. On October 13, 1950, probation was denied and judgment was pronounced sentencing the defendant to state prison. No appeal was taken from the judgment.

On August 26, 1954, the defendant in propria persona filed in the trial court a petition for a writ of error *coram nobis* asserting, among other things, that at the time he pleaded guilty his ability to reason and understand the nature of the case was that of an imbecile. A different attorney was then appointed by the court to represent the defendant and a hearing was had, at which evidence was presented. The petition was denied and the defendant has appealed from that order.

Appellant's sole contention is that there was an error in fact made by the trial court in believing that the appellant was mentally capable of understanding the nature of the proceedings under which he pleaded guilty, and that there are "bits of evidence" which, when taken together, proved that he was at that time mentally incapable of understanding the nature of the proceedings. The appellant relies on four matters which appear in the record. (1) After he had withdrawn his plea of not guilty and when asked "How do you plead to the second count of the information; namely, Lewd and Lascivious Conduct?" the defendant replied "I plead guilty, I suppose." He was then told to confer with his counsel, after which he replied "I plead guilty." (2) When arraigned for judgment on October 13, 1950, the court asked the defendant whether he had any legal cause to show why he should not now be sentenced. His attorney replied "He does not, Your Honor." The court then asked the defendant to speak for himself and the defendant replied "None, I reckon." The court then asked if he under-

stood the question and the defendant replied ''None, I reckon, no legal cause.'' (3) The report of the doctor appointed to examine the defendant, which report was dated October 9, 1950, contains this sentence: ''His intelligence and mentality are, according to my examination and various tests, definitely dull and below the borderline of dull normal, even when one considers his complete lack of training.'' (4) A doctor, who testified at the hearing on the petition for writ of error *coram nobis*, interpreted the report filed by the other doctor as meaning that the defendant was a moron who might not understand the nature of the charges and if it were explained to him might not remember it.

The first two of these matters require no comment. The report of the doctor who examined the defendant before the probation hearing takes up six pages of the transcript. It states that the defendant said to the examiner ''Now they claim I had intercourse with my daughter; the other charge 'L. and L.', what is that? I thought I would get a jail sentence but now it will be San Quentin.'' It further states: ''Reading is very slow and spelling comparable to a third grader. Writing is poor. Intelligence is rather limited to quite concrete thinking.'' It states that when asked whether he thought his actions concerning his daughter were right, the defendant replied: ''No, it is not right. They framed me. I am not guilty of that. It would not be right, I don't believe in it. I only put medicine on that child. Eighteen years is the age for girls.'' After referring to the defendant's lack of education and living conditions the report contains the sentence relied on by the appellant, and then states ''His drinking, plus the poorest domestic quarters as further contributing factors often produce circumstances to predispose to the commission of sexual offenses.''

The doctor who made this report had died and another doctor was called as a witness in behalf of the petitioner at the hearing on the application for the writ. This doctor's attention was called to the sentence in the other doctor's report which is now relied on, and he was asked: ''Now, if a person is definitely dull and below the borderline of dull normal, is there any classification as to his mental condition?'' The witness replied ''This falls into the classification of the moron.'' The court then asked the doctor ''Any person below dull normal is a moron?'' and the doctor replied: ''For purposes of classification. It does not mean these individuals cannot carry out useful tasks. It means their normal

exercise of obtaining information frequently is impaired or they have to do their work under supervision. Many of them can do tasks which require repetition, but they lose a great deal of their initiative. In fact, they have little or no initiative.'' When asked whether in his opinion a moron charged with lewd and lascivious acts could understand this charge, the doctor replied: ''I would think not, especially in this instance, since the man had had—in addition to his subnormal mental attainments had not had the benefit of any educational advantages. He may have been able to understand these things in, say, simple and you might say common language, but perhaps not in this particular language used here.'' The doctor then explained that this opinion was based on the idea that without any explanation the defendant would not understand that language. On cross-examination, the doctor was asked whether he thought a person such as described in the report would understand the nature of his act at the time he was committing the act, and replied: ''If he was in full possession of his faculties, he probably would.'' When asked whether he thought it could be explained to the defendant by his counsel ''so he would understand the nature of the charge placed against him'' the doctor replied: ''It could be done yes, that is right.'' When asked on redirect whether he would say that if this charge were fully explained to him at one time it was possible that at a later time he would not remember it, the doctor replied: ''It is possible.'' The doctor then testified that he had not seen the defendant and that his assistance was of less value than if he had been able to see the man.

The attorney who represented the appellant in the trial court up to the time judgment was pronounced filed an affidavit in which he stated that he was appointed counsel for the defendant on July 11, 1950, and interviewed the defendant on a number of occasions between that time and October 13, 1950; that at all times the defendant appeared to know the nature of the charges against him and was able to cooperate with his counsel in the preparation of his defense; that affiant's investigation revealed that the evidence against the defendant was exceptionally strong; that affiant fully informed the defendant of all the facts that came to his notice, and told the defendant to make up his own mind as to how to plead; that the defendant was given several days in which to consider his decision and thereafter expressed the intention of pleading guilty to the second count; that

the defendant was informed of all the possible results of his plea, and was informed that neither the district attorney nor his counsel could determine in advance what the decision and judgment of the court would be; and that at no time did the defendant indicate any lack of understanding of the nature of the proceedings or of the charges against him.

The question was one of fact for the trial court, and the evidence is sufficient to support the order complained of. While the evidence indicates that the appellant's degree of mentality was not too high it falls far short of showing that he was an imbecile or of establishing, as a matter of law, that he was not mentally capable of understanding the nature of the proceedings or what he was doing at the time his plea of guilty was entered.

The order is affirmed.

Griffin, J., and Mussell, J., concurred.